RAWLS, Judge
(dissenting).
I dissent.
Daniel Russo, the victim in the instant case, notified the Daytona Beach police that while hitchhiking he had been the victim of an assault and a robbery. More specifically, Russo identified his assailants as being two black males and a black female who had picked him up in a red Mercury Capri. Sometime later that day, the police apprehended a red Capri driven by a black female with two black male passengers.[1] Russo was brought to the arrest site and identified appellant Owens as the individual who had beaten him and taken his money. A search of the car revealed sunglasses, a floppy red hat and a one dollar bill under the driver’s seat. A search of Owens disclosed a twenty dollar bill in his right sock.[2] Owens was arrested, advised of his rights, and transported to the police department where he allegedly made a confession.[3] Owens was charged with robbery, tried by jury, convicted and sentenced to two years imprisonment and eight years probation.
By this appeal, Owens poses two points: 1) that the trial court erred in denying his motion for mistrial which was based upon the insufficiency of the victim’s in-court identification and the improper conduct of one of the arresting police officers which tainted that identification, and 2) that the trial court abused its discretion in denying his motion for new trial, which motion was founded on newly discovered evidence establishing that the state’s chief witness, Russo, was incompetent to testify. I find both points to be meritorious and would reverse.
While it is clear that Owens was in the Capri when it was stopped by the police, the only evidence linking him to the actual robbery was the testimony of the victim, Daniel Russo. That portion of Russo’s testimony clearly directed to the actual robber describes him as black and wearing a red shirt, red flop hat and sunglasses. Russo’s remaining descriptive testimony either describes Owens at the arrest site or in the courtroom. On cross-examination the following colloquy took place:
“Q. [defense counsel] Speaking of that, Mr. Russo, this morning, while I was across the street in Judge Blount’s court—
A. [Russo] Yes, sir.
Q. — you were sitting in the courtroom, weren’t you, with Officer Grayson [an arresting officer] and some other people?
A. Yes, sir.
Q. Some black people?
A. Yes, sir.
Q. And didn’t you ask Mr. Grayson which one was Allen Owens?
A. Yes, sir.
Q. You did?
A. Yes.
Q. Because you didn’t know?
A. No, sir.

“A. And we were leaving the courtroom back in county jail, and he said, ‘Do you remember the one with the green hat on?’ And he pointed him out to me.
*200 And I didn’t even know who it was, because it’s been such a long time ago. Q. You didn’t recognize either one of them, did you?
A. No, sir.”
On re-direct, Russo testified that there was no doubt in his mind that Owens was the man the police had custody of at the site of the red Capri. However, on re-cross the following occurred:
“Q. Oh. So what you base your identification on that night was the fact that he got out of the car and he had a red shirt on. Isn’t that true?
A. I’m telling you what I saw in the car: he had a red shirt on. And, when he was over the hood of the police car, he still had a red shirt on. So I figured that was him.”
On cross examination, Officer Grayson testified as follows concerning his in-court discussion with Russo:
“Q. Was Danny Russo also here?
A. Yes, he was.
Q. And the Defendant was also here, wasn’t he?
A. Yes.

Q. And the juvenile [Munge] was also here, wasn’t he?[4]
A. Yes.
Q. And, at some point . . . didn’t Danny Russo ask you which of these two people was the Defendant?
A. He made a statement — He pointed at Mungen, and said, ‘Is that him?’
Q. He didn’t know?
A. That’s what he asked me. He pointed at Mungen and said, ‘Is that him?’
Q. And what was your response?
A. I said, ‘That’s Mungen’.”
Thus, by pointing out Mungen, Officer Grayson, by a process of elimination, identified Owens who was also present.
Florida has long held that all essential elements of a crime, including the identification of the accused as the guilty party, must be proved beyond a reasonable doubt.[5] Further, the identification of a person charged with a crime should be reasonably clear and unequivocal.[6] In the instant case, Russo admitted that at the time of the assault it was dark and he could not get a good look at his assailant. He stated further that all blacks looked alike to him and admitted that any young black male of appellant’s general size who put on sunglasses and a red flop hat would look like his assailant. Also, it is evident from the record that most of Russo’s testimony concerning his assailant relates to his observations of Owens either at the time of his arrest or at trial. However, even these observations are conflicting, in part, with the descriptive testimony given by the arresting officers.[7]
Officer Grayson’s in-court conduct of identifying Owens to Russo prior to trial was impermissibly suggestive and required the suppression of Russo’s identification testimony unless and until the state had demonstrated that the in-court identification of Russo rested upon an independent and untainted foundation.[8] As stated by the Second District in Hamilton, supra:
“We cannot treat the error as harmless because this is not a case in which the identity of the defendant is otherwise established or in which the opportunity to know the identity of the suspect was so great and the identification so clear the police impropriety thereafter did not *201 raise a question of deprivation of due process when all of the circumstances are considered.”
Owens’ second contention of error is that the trial court abused its discretion in failing to grant his motion for new trial. Owens’ motion for new trial was predicated upon certain new evidence he offered concerning Russo’s competency, i. e., a certified statement of the Clerk of the City Court of Daytona Beach Shores establishing that Russo, less than two weeks after Owens’ conviction, had plead guilty to the offense of falsely reporting an injury to an ambulance service for which he served seven days in jail. Owens buttresses his contention that the above new evidence was sufficient grounds for a new trial by pointing out that the court, at trial and over Owens’ objection, found Russo competent to testify, despite the fact that he had recently been hospitalized for psychiatric treatment and, further, in view of Russo’s own testimony that he had, three days before the trial, told a man in the courtroom that he had killed a policeman, robbed two gas stations and was going to prison for a long time — none of which was true.
Although it is the general rule that to warrant a new trial on the ground of newly discovered evidence, the evidence “must go to the merits of the cause and not merely to impeach the character of a witness”,[9] the Florida Supreme Court has held that in certain circumstances newly discovered evidence of a witness’s bad character and reputation was a sufficient basis for a new trial.[10] In Childre v. State, supra, the Supreme Court stated:
“Probably there are few cases in which a new trial should be granted because of newly discovered evidence consisting only of evidence as to the bad character and reputation of a witness. In a case like this, however, where the state relies upon the uncorroborated testimony of one witness to prove a charge which is easy to make and hard to negative, and where the evidence upon the trial shows, as it did show in this case, that such witness is, to say the least careless in her habits, and that the alleged assault occurred while she was under the influence of intoxicating liquor imbibed by her at a general drinking party of which she was one of the heaviest drinkers, such newly discovered evidence becomes most relevant and material.”
In my opinion, the new evidence submitted in support of Owens’ motion for new trial, in view of Russo’s previously questionable competency, is especially significant to the issue of his competency to testify, and it was error for the court below not to grant a new trial.

. It is undisputed that Owens was a passenger in the car when it was apprehended.

. Owens was dressed in gym shorts or “cut offs”, which he claimed were pocketless and gave the explanation that he kept his money in his sock while playing basketball. The driver of the car, Barbara Watson, had approximately $21.00 in her purse in different denominations which the police officers “determined” was her own money. Russo testified that he was robbed of approximately $38.00 consisting of a twenty, a ten and some ones.

.Owens’ confession was oral, although the officer who took it had access to audio and visual tape recording machines as well as writing materials.

. Mungen was the second black male apprehended in the red Capri.

. McNeal v. State, 104 Fla. 360, 139 So. 791 (1932).

. Anderson v. State, 92 Fla. 477, 110 So. 250 (Fla. 1926).

. Appellant weighed substantially more than Russo’s description of his assailant and Russo testified that his assailant had his hair in an afro style while the arresting officers testified that Owens’ hair was either plaited or braided on the night in question.

. Hamilton v. State, 303 So.2d 656 (Fla. 2nd DCA 1974); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

. Howard v. State, 36 Fla. 21, 17 So. 84 (1895).

. Childre v. State, 106 Fla. 334, 143 So. 309 (1932).